97   291
117  585

RAND v. LIFE ASSURANCE SOCIETY.

(*Knoxville.* September 26, 1896.)

1. INSURANCE, LIFE. *Statements in application construed. Serious illness.*

   A statement in an application for life insurance that the applicant has never had "any serious illness," is held to mean no more than that he has not been so seriously ill as to permanently impair his constitution and render the risk unusually hazardous. (*Post, pp. 292, 294, 295.*)

2. SAME. *Same. Specific diseases.*

   A statement in an application for life insurance that the applicant has never had certain specific diseases is held to mean that he has not had attacks of the character named so serious as to indicate a vice in the constitution, and to have some bearing upon general health or the continuance of life. This statement refers to permanent, habitual, and constitutional affections, and not to mere temporary ailments which are curable and pass away. (*Post, pp. 292, 294, 295.*)

   Case cited: 70 N. Y., 72.

3. SAME. *Same. Use of chloral.*

   A statement in an application for life insurance that the applicant has never been addicted to the use of chloral refers not to a single or incidental use, but to an habitual, customary, or constant use. (*Post, pp. 292, 294, 295.*)

   Case cited: 70 N. Y., 605.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County.
T. M. McCONNELL, Ch.

CLARK & BROWN and BROWN & SPURLOCK for Rand.

EAKIN & DICKEY for Life Assurance Society.

McALISTER, J. This bill was filed in the Chancery Court of Hamilton County to enforce the collection of a policy of life insurance. The company resisted the payment of the policy upon the ground that there had been misrepresentations made by the assured in his application which constituted a breach of the warranty contained in the policy. Certain issues were formulated, and a jury demanded to try them. The jury, under the charge of the Court, returned a verdict in favor of the complainants. The decree of the Chancellor was affirmed by the Court of Chancery Appeals, and the company has appealed to this Court.

It appears from the record that the assured made to the medical examiner of the company the following statements or representations, namely: (1) That he was then in good health; (2) that he never had any serious illness nor had undergone any surgical operation, except for collar bone broken when a boy; (3) that he had not been addicted to the use of chloral or any narcotic; (4) that he never had any disease of the bladder; (5) that he never had any disease of the skin; (6) that he never had any disease of the urinary organs; (7) that he never had chronic diarrhœa; (8) that he never had inflammatory rheumatism; (9) that he never had scrofula; (10) that he

never had syphilis; (11) that Dr. V. Gibbs, Chatta-nooga, were the name and residence of his medical attendant; (12) that Dr. Gibbs was the last physician who attended him, which was a year before, for a slight bilious attack; (13) that he did not then use wine, spirits, or malt liquors; (14) that he had never used them to excess; (15) that he never had delirium tremens.

The policy contained the following warranty, made both by the assured and the beneficiaries, to wit: "We further declare and warrant, jointly and sev-erally, that all the foregoing statements and repre-sentations, etc., are made to the medical examiner, etc., and are true, and shall be the basis of the contract with the society, . . . and that if any untrue or fraudulent statements or representations shall have been made, . . . said policy of insur-ance shall be null and void."

The first issue submitted for the determination of the jury was, whether the foregoing representations made to the medical examiner were true or false. The jury responded that said statements were true. The fourth issue submitted to the jury was, whether or not, at the time said statements and representa-tions were made and the policy issued, the defend-ant company knew of the extent to which the assured had used intoxicating liquors. The jury re-sponded that the defendant had such knowledge. The material error complained of is found in the following instruction, submitted by the Chancellor to

the jury, to wit: "In the first issue the inquiry is made, in Subsecs. 4, 5, 6, as to whether or not the assured had ever had certain diseases named in the subsections. A mere temporary ailment of the kind named will not constitute the diseases named, as contemplated in the questions and answers given. In construing policies of insurance, it must be generally true that, 'before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing at least on the general health and continuance of life, or such as according to common understanding would be called a disease.' The legal meaning of all, or nearly all, of the questions referred to and asked in said first issue, has, in one way or another, been fixed by law, and in finding your verdict as to whether or not the answers of the assured to said question were true or untrue when made, you will consider them from and under the meaning as hereinbefore and hereinafter given you. The term 'serious illness' in the second item, means such illness as is likely to impair permanently the constitution, and render the risk more hazardous. . . . Addicted to the use of chloral, means habitual, customary, or constant use of it. . . . You will consider and find whether or not McGaughey made the warranties or representations inquired about in the first issue, and whether or not they were true when made, and, also, whether or not the respondent company had

knowledge as to said McGaughey's drunken habits, inquired about in the third and fourth issues, when the contract was made.''

The Court of Chancery Appeals adjudges that the foregoing instructions were not erroneous, and their action is made the basis of this assignment of error. We are of opinion the instruction criticised was in accord with the authorities.

Says Mr. Bacon, in his work on Life Insurance, Vol. I., Sec. 234, viz.: ''Before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health or the continuance of life, or such as, according to common understanding, would be called a disease, and such has been the uniform opinion of text-writers and Courts. *Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y., 72. So a cold is not a disease, though accompanied with more or less congestion of the lungs; and though most, if not all, persons will have, at a time, congestion of the liver, causing slight functional derangement and temporary illness, yet, in the contemplation of parties entering into contracts of life insurance, and having regard to general health and the continuance of life, it may be safely said that there is in such cases no disease of the liver. When the applicant says that he has never had any serious illness, the Courts will construe the meaning to be that he has never been so seriously ill as to permanently impair his constitution and render the

risk unusually hazardous.'' Bacon on Life Ins., Vol. I., Sec. 234, and authorities cited.

So in the case of *Insurance Co.* v. *Wilkenson,* 13 Wall., 222, it was said statements as to disease, complaint, or ailment relate to permanent, habitual, constitutional affections, and not to any temporary ailment which is curable, and passes away. *Insurance Co.* v. *Union Trust Co.,* 112 U. S.

In the case of *Vanvalkenburg* v. *American Popular Life Ins. Co.,* 70 N. Y., 605, the question asked was: ''Does the insured use any intoxicating liquors or substances?'' And the Court held that this question did not direct the mind to a single or incidental use, but to a customary or habitual use.

Complaint is also made that the Chancellor failed to give the jury explicit instructions in respect of the use by the assured of intoxicating liquors. It suffices to state that no such instructions were asked by counsel, and the jury found, as a matter of fact, that the representations made by the assured to the medical examiner ''that he did not then use wine, spirits, or malt liquors,'' and ''that he had never used them to excess,'' was true. We are of opinion the Chancellor correctly expounded the legal meaning of the stipulations embodied in the application and policy of insurance. The decree of the Court of Chancery Appeals is therefore affirmed.