MARY C. SARGENT v. MODERN BROTHERHOOD OF AMERICA, Appellant.

**Fraternal insurance:** ACTION UPON POLICY: DEFENSES: STATUTES.
1 Code, section 1812, providing that where the examining physician for an insurance company or association reports upon an applicant that he is a good physical risk, the company is thereby estopped from defending an action on the policy on the ground that the applicant was not in the required condition of health at the time of its issuance, unless such report was procured by the fraud or deceit of the applicant, has no relation to fraternal beneficiary societies, orders or associations.

In the instant case the pleadings and proof show defendant to be a fraternal beneficiary society and therefore exempt from the provisions of the statute.

**Same:** FALSE STATEMENTS: BREACH OF WARRANTY. Where an appli-
2 cation for membership in a fraternal beneficiary society contains representations which are untrue, the society, under a provision of the certificate that if the application or any part of the same contains untruthful statements the certificate shall be void, may rely on any such false statements as breaches of warranty.

**Same:** BURDEN OF PROOF. The burden of proof is upon a fraternal
3 insurance society seeking to show the falsity of the answers of an applicant for membership.

**Evidence:** AFFIRMATIVE AND NEGATIVE TESTIMONY. The testimony of an examining physician that he had no recollection of calling upon the applicant professionally previous to the examination, or that his attention was called to that fact at the time of the examination, was not sufficient, in view of the fact that he had made many other examinations for defendant and other fraternal orders, to overcome the specific testimony of another witness as to what was said to him and by him at the time.

**Fraternal insurance:** MISREPRESENTATIONS: WARRANTIES. A beneficial society may by its contract make a misrepresentation in an application for membership a warranty in the sense that a false statement will render the contract void, although the inquiry in response to which the statement is made is not as to a matter strictly material to the risk, and the death of the member did not result from any of the matters as to which the false statements were made.

**Same:** INTERPRETATION OF LANGUAGE USED. In the interpretation of the language used in the questions propounded and the answers thereto of an applicant for fraternal insurance, a reasonable and even liberal construction will be adopted in favor of the member, so as to avoid a forfeiture on technical grounds.

**Same:** FALSE STATEMENTS: SUFFICIENCY OF PROOF. The statement of an applicant for beneficial insurance that he was in good health is not shown to be false by proof of temporary ailment not of so serious a character as, according to common understanding, would be called a disease. Thus in this case proof that the applicant had temporarily suffered from throat and stomach trouble, and had suffered occasional headaches from temporary causes, was not sufficient to establish as false the representation of applicant that she had not previously been afflicted by disease; although there was a specific inquiry as to habitual headache which was answered in the negative.

**Same.** An applicant for beneficial insurance is not required to disclose the occasion and circumstances of every consultation with a physician for temporary indisposition not amounting to disease; and a statement that the applicant had not been attended by a physician was not shown to be false because of proof that she had consulted a physician for temporary ailments.

**Same:** ESTOPPEL. Where an applicant informed the examining physician of a fraternal society, at the time of taking his application, concerning the applicant's last attendance by a physician and the nature of his ailment, and was informed that it was not necessary to disclose that matter, he was relieved from any imputation of falsity in failing to disclose the facts.

*Appeal from Hardin District Court.*—HON. C. G. LEE, Judge.

SATURDAY, JULY 9, 1910.

ACTION to recover a death benefit under a certificate of membership of Lulu N. Sargent in the defendant association, which benefit was made payable to this plaintiff, the mother of said member. The proceeding was in equity, and the court decreed that plaintiff was entitled to participate in the mortuary fund of the association to the amount of one full assessment on all members in good standing, not to exceed $1,000. The defendant appeals.—*Affirmed.*

*Blythe, Markley, Rule & Smith* and *Ward & Williams,* for appellant.

*Lundy & Wood,* for appellee.

McCLAIN, J.—The defense to this action is predicated on alleged false statements contained in the application for membership, and the questions argued are: First, whether, in the absence of proof of fraud, false statements constituted a defense; and, second, whether the alleged misstatements were in fact false.

I. It appears that the application on which the certificate of membership was issued, consisted to a considerable extent of answers of the applicant to questions propounded by defendant's regular examining physician, Doctor Guthman, who wrote down the answers and certified at the end of the examination that he considered the applicant a good physical risk. It is one of the contentions of appellee that this report of the examining physician that the applicant was a fit subject for insurance estopped the defendant from setting up in defense of this action on the

*1. FRATERNAL INSURANCE: action upon policy: defenses: statutes.*

certificate that the assured was not in the condition of health required by the policy at the time of the issuance of the certificate, in the absence of any evidence that the certificate was procured by or through the fraud or deceit of the assured. See Code, section 1812. *Brown v. Modern Woodmen,* 115 Iowa, 450; *Ley v. Metropolitan L. Ins. Co.,* 120 Iowa, 203.

The contention for appellant is, in this respect, that the statutory provision just referred to, found in the chapter of the Code relating to life insurance companies and associations, has no relaton to fraternal beneficiary societies, orders, or associations, which are specifically governed by another chapter of the Code and exempted from the provisions of statutes relating to life insurance companies, except as specified in the latter chapter. If the defendant is a beneficiary society or association, and not a life insurance company or association, then the provisions of Code, section 1812, have no applicaton to this case. *Smith v. Supreme Lodge,* 123 Iowa, 676.

The allegations of the petition are that "defendant is an association organized under the laws of the state of Iowa as an insurance company and fraternity for the purpose of insuring the lives of its members, as indicated by Exhibit A hereto attached." And it is admitted in the answer "that the defendant is a corporation organized under the laws of the state of Iowa relating to fraternal and beneficiary associations." This is the only admission as to the character of the defendant association, and by general denial of all allegations of the petition not admitted, any allegation of the petition inconsistent with this admission is denied. There is also a specific allegation that the defendant is a fraternal beneficiary association organized under the chapter of the Code relating to such associations.

By way of stipulation it was agreed on the trial that the certificate set out as an exhibit to the petition was

executed by the defendant on the application, which was introduced in evidence and made part of the record, and that another exhibit incorporated in the record was a copy of the articles of incorporation of the defendant society, under which it was organized and transacted business. The certificate recites that it entitles the applicant to membership in said fraternity, and that such certificate, together with the articles of incorporation, by-laws, and regulations of the society, constitute express warranties, conditions, and agreements as between the defendant and said member. The application refers to the applicant as proposed for membership in the defendant, and the articles of incorporation expressly recite that the incorporators associate themselves together as a body corporate for the purpose of organizing a fraternal beneficiary society under the statutes providing for the organization of such societies.

Under the allegations of the pleadings and the stipulations on the trial, it is clear that the defendant is a fraternal beneficiary society, order or association, and not a life insurance company or association, and, therefore, that the provisions of Code, section 1812, above referred to, do not apply to it. The allegations and the proof clearly distinguish this case from the cases relied upon by the appellant. See *Stork v. Supreme Lodge,* 113 Iowa, 724; *Brown v. Modern Woodmen,* 115 Iowa, 450; *Krause v. Modern Woodmen,* 133 Iowa, 199.

In the case last cited it appears that the character of the defendant corporation as a life insurance society under the averment in the petition that it was a life insurance and beneficiary society was not put in issue, and there was no specific proof as to its character. We have no occasion therefore to determine the effect of Code, section 1812, as applied to this case; and if the application contains specific representations which are shown to have been untrue, then the defendant may rely upon them as breaches of warranty,

2. SAME: false statements: breach of warranty.

rendering the certificate void under the provision found in the certificate, that if said application or any part thereof shall be found untrue, then the certificate shall be null and void and of no effect.

II. The misstatements relied upon by appellant, as constituting breaches of warranty rendering the certificate void, are found in the answers of the applicant to questions by the physician; the answers being written by the regular examining physician for the defendant, and the application as thus filled out being signed by the applicant and warranted to be true. So far as relied upon for the appellant these questions and answers were as follows:

Question 4. Have you ever had any of the following diseases: (a) Habitual headache? Answer. No.

Question 5. Have you ever had any other disease or surgical operation? Answer. No.

Question 9. When and by what physician were you last attended and for what complaint? Answer. Never have been sick.

Question 14. Have you had during the last seven years any disease or severe sickness? Answer. No.

Question 22H. Is your menstruation regular and normal? Answer. Yes.

We can not set out all the evidence relating to the truth or falsity of these answers. But bearing in mind that the burden of proof was on the defendant to show the answers to be false, we find that the most that can be claimed for the evidence is that it shows: (1) That the applicant had been afflicted with headaches, sometimes as often as once in two weeks, but not so often in the last few years of her life; (2) that in January, 1907 (the certificate was issued in August, 1907, and her death occurred in October following), the applicant had had an attack of sore throat, tonsilitis or quinsy which had been of a temporary character, from which she recovered in two or three days, having had one call from

3. Same: burden of proof.

a physician on that account, and that in the latter part of June and the first part of July in the same year she had had a rather severe attack of gastritis which was brought on by the eating of strawberries and cream, and during which she was twice called on by a physician for purposes of treatment, and further that a slight attack of stomach trouble had occurred in August for which she once called upon a physician, this attack having no apparent reference to or connection with the attack in June and July; (3) that when she was asked by the examiner about the last attendance by a physician his attention was called to the fact that he was the physician who had attended her in August for stomach trouble of the same character as that for which a Dr. Jones had treated her in June and July, and that the examiner said that those little things didn't count; that the question related to some serious sickness, such as typhoid; and (4) that while on one or two occasions the applicant had missed her regular periods of menstruation, she had been regular in this respect for some time prior to the examination.

It is true that the examiner, as a witness, testified that he had no recollection of attending the applicant in August, nor of his attention being called to the matter 4. EVIDENCE: affirmative and negative testimony. by the applicant or her mother when the questions were being answered. But in view of his admission that he had made many examinations of applicants for membership in this and other fraternal orders, his general denial of recollection is hardly sufficient to overcome the specific testimony of the mother of the applicant as to what was said to him and by him at the time the application was filled out. The testimony of the physician who attended the insured during her last illness indicates that she died as the result of an irregular form of typhoid fever or possibly a tubercular condition simulating it, called miliary or general tuberculosis.

It must be conceded that, in the absence of any restriction found in the statute, and we find none in the statutes applicable to fraternal beneficiary societies, a misrepresentation may by the terms of the contract be made a warranty in such sense that a false statement will render the contract void, although the injury in response to which the statement is made is not as to a matter strictly material to the individual risk and the death did not result from any of the matters as to which there was a false statement. In other words, an insuring association may select the terms on which it will enter into contracts of insurance, and may insist that the contract is void if such terms are not complied with. The cases relied upon for appellant are of this character, and need not be further considered in view of the concession which we are now making.

*5. Fraternal insurance: misrepresentations: warranties.*

But in the interpretation of the language used in calling for answers and in making response to such inquiries, the courts insist upon a reasonable or even a liberal construction in favor of the assured, with a view to avoiding forfeitures on purely technical grounds. As is said in the case of *Wilkinson v. Connecticut Mutual L. Ins. Co.*, 30 Iowa, 119, 127, relating to the failure to disclose in answer to a question about previous accidental injuries a slight injury which the jury specifically found not to be serious: "The language of the question is to have a reasonable construction in view of the purposes for which the question was asked. It must have reference to such an accidental injury as probably would or might possibly have influenced subsequent health or longevity of the insured. It could not refer, and could not be understood by any person reading the question for a personal answer to refer, to a small burn upon the hand or arm during infancy, to a cut upon the thumb or finger in youth, to a stumble or falling or sprain of a joint in more advanced age. The idea is that

*6. Same: interpretation of language used.*

such a construction is to be put by the courts upon the language as an ordinary person of common understanding would put upon it when addressed to him for answer." The courts, in all jurisdictions, so far as we can discover, have applied this general principle of interpretation in determining whether an answer to a question is false.

Thus, it has been held that a statement that the applicant is in good health is not shown to be false by proof of a temporary ailment, not indicating a vice in the constitution or so serious as to have some bearing on the general health and continuance of health; that is, such as according to common understanding, would be called a disease. *Sieverts v. National Ben. Ass'n*, 95 Iowa, 710; *Meyer v. Fidelity & Cas. Co.*, 96 Iowa, 378; *Cushman v. United States L. Ins Co.*, 70 N. Y. 72; *Insurance Co. v. Trefz*, 104 ·U. S. 197 (26 L. Ed. 708); *Connecticut Mut. L. Ins. Co. v. Union Trust Co.*, 112 U. S. 250 (5 Sup. Ct. 119, 28 L. Ed. 708); *Life Ins. Co. v. Francisco*, 17 Wall. 672 (21 L. Ed. 698); *Blumenthal v. Berkshire L. Ins. Co.*, 134 Mich. 216 (96 N. W. 17, 104 Am. St. Rep. 604); *Plumb v. Penn. Mut. Ins. Co.*, 108 Mich. 94 (65 N. W. 611); *Hann v. National Union*, 97 Mich. 513 (56 N. W. 834, 37 Am. St. Rep. 365); *Franklin Life Ins. Co. v. Galligan*, 71 Ark. 295 (73 S. W. 102, 100 Am. St. Rep. 73); *Billings v. Metropolitan L. Ins. Co.*, 70 Vt. 477 (41 Atl. 516); *Rand v. Life Assur.· Soc.*, 97 Tenn. 291 (37 S. W. 7). Even where the inquiry is as to a specific ailment or disease it is to be interpreted as calling for an answer only where the previous attack was of a nature likely to result in impairment of health · or to indicate a constitutional difficulty which might shorten life. *Rupert v. Supreme Court U. O. F.*, 94 Minn. 293 (102 N. W. 715); *Northwestern Mut. L. Ins. Co. v. Heimann*, 93 Ind. 24; *Mutual Ben. L. Ins. Co. v. Daviess' Ex'r*, 87 Ky. 541 (9 S. W. 812). Accordingly, this court

*7. SAME: false statements: sufficiency of proof.*

had held a negative answer as to "spitting or coughing of blood" was not false, unless the evidence showed that the applicant had been subject to spitting or coughing of blood in such sense as that a reasonable person might suppose some ill health or physical condition, affecting the desirability of the applicant as a risk, was indicated. *Peterson v. Des Moines L. Ass'n,* 115 Iowa, 668.

Giving to the questions and answers in this case relating to previous disease or severe sickness the interpretation thus indicated, it is clear that the evidence did not show any falsity in the statements. The tonsilitis or quinsy was not of a character to be denominated a disease, and the stomach trouble appears to have been of a similarly inconsequential character. Headaches due to ` temporary causes, not indicating or resulting in constitutional impairment, are not regarded as matters of enough consequence to be disclosed even where there is a specific question as to habitual headaches. *Mutual L. Ins. Co. v. Simpson* (Tex. Civ. App.) 28 S. W. 837.

The same principle is to be applied in construing questions and answers relating to prior attendance by a physician. In response to such question it is not necessary

8. SAME.

for the applicant to disclose the occasion and circumstances of every consultation of a physician for temporary disability or indisposition, not amounting to a disease. *Blumenthal v. Berkshire L. Ins. Co.,* 134 Mich. 216 (96 N. W. 17, 104 Am. St. Rep. 604); *Franklin L. Ins. Co. v. Galligan,* 71 Ark. 215 (73 S. W. 102, 100 Am. St. Rep. 73).

If, as appears from the evidence, the attention of the examining physician was called to the fact that he himself had been previously consulted as to the stomach trouble

9. SAME:
estoppel.

of the same character as that for which another physician had previously been consulted, and he indicated to the applicant that it was not necessary to disclose this matter in the answer to the question about

the last attendance by a physician and the complaint as to which he was consulted, then this fact alone would relieve the applicant from any imputation of falsity in the answer, for the applicant was justified in relying upon the regular examiner for advice as to what the question called for. *Mutual Reserve Fund L. Ass'n, v. Ogletree,* 77 Miss. 7 (25 South. 869); *Connecticut Gen. L. Ins. Co. v. Mc-Murdy,* 89 Pa. 363; *Provident L. Assur. Soc. v. Cannon,* 201 Ill. 260, 66 N. E. 388. As already indicated, the evidence showed no irregularity in menstruation at the time of the application, and even if the question were to be interpreted as calling for previous irregularity, the evidence shows that there had been no condition in this respect having the characteristics of a disease which should have been disclosed.

We reach the conclusion that the affirmative defenses based upon the breaches of warranty consisting in false statements, given in answer to the questions propounded to the applicant, were not established by a preponderance of the evidence in any respect.

The judgment is *affirmed.*